137 N.J. Super. 110 (1975)
348 A.2d 195
HOUSING AUTHORITY OF THE CITY OF NEWARK, PLAINTIFF-APPELLANT,
v.
JOHN SCOTT AND LILLIAN SCOTT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1975.
Decided November 10, 1975.
*113 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Messrs. Friedman & D'Allessandro, General Counsel, attorneys for the appellant (Mr. Richard A. Conti, on the brief).
No brief or appearance by respondents.
*114 The opinion of the court was delivered by BOTTER, J.A.D.
Plaintiff commenced an action for $2,095 in rent due from defendants for July 1972 through October 1973. The first-floor apartment which defendants occupied was located in the Stella Wright Project owned and operated by plaintiff. By way of defense and setoff defendants asserted plaintiff's breach of an implied warranty of habitability (Berzito v. Gambino, 63 N.J. 460, 467, 469 (1973)), complaining of lack of heat and hot water, dirty hallways, incinerator smoke in hallways and in their apartment, falling plaster, failure to paint the apartment, water leaks in the bathroom and kitchen, flooding from a standby pipe in the hallway, broken windows and disrepair of the kitchen stove. The trial judge allowed an abatement of rent equal to approximately 30% of the back rent due, entering judgment in favor of plaintiff for $1,467.50. Plaintiff appeals from the allowance of the rent abatement.
After the appeal was taken defendants did not cross-appeal from the determination of rent due but, instead, paid the judgment in full. A warrant of satisfaction was then filed. In view of plaintiff's contentions before us we conclude that, in accepting the portion of rent found to be due from defendants, plaintiff did not intend to and did not waive its right to pursue this appeal from the trial judge's allowance of the rent abatement. This disposes of the motion made by plaintiff during the pendency of this appeal seeking a determination that the appeal has not been rendered moot.
Plaintiff contends that the remedy of allowing an abatement of rent where the tenant has not made repairs should not apply to public housing where the rents charged are limited by law to levels below that prevailing in the private sector. 42 U.S.C.A. § 1402(1), (2). By limiting the amount of rent to a portion of a tenant's income the tenant receives a subsidy to the extent that the value of the apartment or the cost in furnishing the housing unit exceeds *115 the rent paid. But to deprive a tenant of an offset to the extent that the habitability of the premises has been substantially diminished would result in a diminution of the subsidy intended to be furnished and a diminution of the housing authority's incentive to remedy defects and deficiencies. Accordingly, we conclude that an abatement in rent equal to the proportionate loss of habitability is an effective remedy which may be afforded to tenants of public housing.
It is clear that in fashioning an appropriate remedy no one solution will necessarily exhaust "the creative powers" of the courts. Berzito v. Gambino, supra, 63 N.J. at 469. Concededly the Legislature excluded public housing from the statutory procedures authorizing tenants in substandard dwelling units to deposit their rents with a court-appointed administrator for use in remedying defective conditions. N.J.S.A. 2A:42-85 et seq. This act became effective on June 21, 1971 (L. 1971, c. 224, § 14) after Marini v. Ireland, 56 N.J. 130 (1970) was decided, and there is nothing in the act to indicate that its provisions were exclusive of other court-fashioned remedies. Rather, the statute affords an elective, not a mandatory, remedy which "may" be sought. N.J.S.A. 2A:42-88.
Similarly, we conclude that allowance of an abatement in rent for uncorrected defects in housing facilities or services is not precluded by preemption of federal or state law. Thus, allowance of a setoff from rent due is within the jurisdiction of the county district court. Marini v. Ireland, supra, 56 N.J. at 140; Berzito v. Gambino, supra, 63 N.J. at 469. Of course, the federal and state legislative schemes contemplated establishing low rent levels, which, together with federal grants (42 U.S.C.A. § 1410) and indirect local subsidies in the form of payments in lieu of taxes (42 U.S.C.A. § 1410(h)), would provide for operation of the project "on a solvent basis." 42 U.S.C.A. § 1410(a); see also N.J.S.A. 55:14A-8. But the *116 essential objective of the federal law is to assist state and local governments in alleviating "unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income * * *." 42 U.S.C.A. § 1401. See also, N.J.S.A. 55:14A-8 which provides for fixing rents at the "lowest possible rates consistent with its providing decent, safe, and sanitary dwelling accommodations * * *." It is not the statutory design to require tenants to subsidize public housing by paying rent for substandard accommodations. The payment of rent and the maintenance by the landlord of decent, safe and sanitary dwelling units are correlative, "mutually dependent" obligations. See Berzito v. Gambino, supra, 63 N.J. at 469. Nothing in the legislation suggests that providing habitable accommodations is subservient to the goal of project solvency. Neither the tenants nor the courts have the responsibility to find a way to keep rent rolls at high enough levels to maintain the solvency of the projects. High vacancy rates due to unhabitable conditions may doom the economic stability of the venture. But this would afford no basis for taxing tenants above rent levels established within the statutory framework. Nor does it preclude reducing the rent paid by a tenant for that portion of habitable accommodations which the tenant has not received.
We do not find that the housing authority legislation exhausts the limits of plaintiff's financial responsibilities. Municipal housing authorities can be sued (N.J.S.A. 55:14A-7(a); Jersey City Sewerage Auth. v. Jersey City Housing Authority, 40 N.J. 145 (1963); Goldberg v. Newark Housing Auth., 38 N.J. 578, 581 (1962)), and are subject to the substantive laws of the State. Union City Housing Auth. v. Commonwealth Trust Co., 25 N.J. 330, 335 (1957). The housing authority as a landlord can claim no exemption from the obligation to furnish habitable accommodations for its tenants. No federal regulation has been called to our attention which would prevent reducing *117 a tenant's rent when he has been deprived of facilities or services to which he is entitled and which are included in the established rent. Nor do we conceive that this judicial remedy infringes upon a domain fully occupied by legislative branches of government. The remedy of rent abatement has been held to apply to public housing in other jurisdictions. Boston Housing Authority v. Hemingway, 363 Mass. 184, 293 N.E.2d 831 (Sup. Jud. Ct. 1973); Coleman v. United States, 311 A.2d 496 (D.C. Ct. of App. 1973); see National Capital Housing Auth. v. Douglas, 333 A.2d 55, 56, n. 2 (D.C. Ct. of App. 1975).
We find no merit, also, to the contention that the principles of Marini v. Ireland, supra, do not apply to month-to-month tenancies, simply because that case dealt with a leasehold for one year. Berzito v. Gambino, supra, which followed Marini and which sanctioned the remedy afforded here, actually involved a weekly tenancy.
We reject also the contention that the abatement should be taken from a "fair rental value"[1] determined on the basis of assumed free-market forces in the "private sector," as distinguished from the rent fixed within the maximum levels established under governmental guidelines. 42 U.S.C.A. § 1402(1). This is as inappropriate as it is to suggest that a tenant who is dissatisfied should move out. See Reste Realty Corp. v. Cooper, 53 N.J. 444, 461-462 (1969); Berzito v. Gambino, supra. The premise of public housing is to furnish decent housing for the needy *118  the poor and the aged with limited income  where such housing is nonexistent or in short supply. It would frustrate this objective to allow a "rebate" against a higher, theoretical rent which would result in requiring the tenant to pay the original rent for substandard housing.
Appellant also contends that the trial judge failed to make allowance for the fact that some of the problems in the project may have been caused by tenants' children, such as breaking windows or turning on the water in standby pipes in hallways. But there was no proof that defendants or their children were responsible for any of the conditions in issue. We see no basis for holding defendants responsible for the wrongdoing of others. Plaintiff, not defendants, had the responsibility for policing and maintaining its common areaways.
Finally, plaintiff asks us to reconsider the wisdom of the doctrine established in Berzito v. Gambino, supra, which allows a tenant a reduction in rent rather than obligate him to make repairs and claim only their actual cost. As plaintiff acknowledges, however, its request for reconsideration must be addressed to the Supreme Court, not this court. Murray v. Michalak, 114 N.J. Super. 417, 420 (App. Div. 1970), aff'd o.b. 58 N.J. 220 (1971); see Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415 (1961).
Affirmed.
NOTES
[1] In cases where there has been no showing that rent levels were established below "market value," such as at a portion of the tenant's income, rent chargeable to the tenant has been held to be "the reasonable value of the property in its imperfect condition" during the tenant's occupancy. Berzito v. Gambino, supra, 63 N.J. at 469; Samuelson v. Quinones, 119 N.J. Super. 338, 343 (App. Div. 1972). See Boston Housing Auth. v. Hemingway, supra, 293 N.E.2d at 845; McKenna v. Begin, Mass. 325 N.E.2d 587 (App. Ct. 1975); Green v. Superior Ct., 10 Cal.3d 616, 639, 517 P.2d 1168, 1183, 111 Cal. Rptr. 704, 719 (Sup. Ct. 1974).