146 N.J. Super. 271 (1977)
369 A.2d 938
PARK HILL TERRACE ASSOCIATES, PLAINTIFF-RESPONDENT,
v.
STEPHANIE GLENNON, ALAN MITNICK, RICHARD STOFF, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1976.
Decided January 7, 1977.
*273 Before Judges FRITZ, CRAHAY and ARD.
Mr. William Goldberg argued the cause for appellants.
Mr. Jay W. Greenstone argued the cause for respondent (Messrs. Greenstone & Sokol, attorneys).
PER CURIAM.
The county district court consolidated three summary dispossess actions and following trial gave judgment of possession to respondent landlord. The warrants for possession were stayed pending this appeal.
The issues addressed to us now are whether air conditioning may constitute an element of habitability so as to allow for an abatement in rent payments where there is failure of it, and secondly, if such be the case, whether timely and reasonable efforts by a landlord to cure such a defect will defeat the claimed abatement.
Respondent landlord owns property located in the Borough of Fort Lee on which is situated an apartment house of approximately 100 residential dwellings. Central air conditioning is provided to tenants and is contemplated under written leases. (The form lease, however, provides that in the event that air conditioning, as well as heat and hot water, should cease for reasons beyond the control of the landlord, the tenants' obligations under the lease  presumably including the payment of rent  would not be affected, nor would the tenant have any other claim because of it. That lease provision is not advanced on this appeal.) The three defendant tenants, as well as 52 others, withheld a portion of their August 1975 rent, claiming the *274 total inoperability of the building's air conditioning system. Under plaintiff's complaint it was alleged that tenants Mitnick owed $60.50; Glennon owed $69.74 and Stoff owed $173.74; amounts the respective tenants withheld as being, in their judgment, fair rental abatements.
A former officer of the tenants' association testified that he wrote a letter in May 1975 to the management giving them reasonable time to have the air conditioning repaired for the summer of 1975. He had had many conversations with management concerning the system since the situation had been deteriorating since 1973.
On behalf of appellant Mitnick his wife testified that she had been a resident of the premises for about two years and that in prior summers the air conditioning had broken down. In June 1975 there were days in which the air conditioning failed. She notified the management. She testified that on 11 specific dates in July the air conditioning did not work at all and that as a result living conditions were unbearable. Her family could not sleep, she paced the floor at night and needed to take several showers each day to cool off. She left the apartment as early as possible each day. Her temperament was affected. She had to buy a fan. The temperature in the apartment reached 90 degrees on a few occasions and most of the time on the involved days was in the high eighties. She deducted 50% from her rent for those days of total inoperability of the air conditioning system.
The tenants Stoff had been lessees of the premises for five years. Mrs. Stoff testified that with the air conditioning off the apartments were unbearably hot. It was difficult to sleep and meals could not be cooked. Sandwiches and salads had to be eaten. She pointed out as an example of the discomforture that she would dress her four-month old infant for bed, anticipating a cool apartment, and that on the failure of the air conditioning it was necessary to redress her child and she had difficulty getting her back to sleep. At times the Stoffs could not sleep at all. On some occasions *275 Mr. Stoff would take meat to his mother's home, cook it and bring it back. They bought an individual air conditioning unit in July 1975. The Stoff's claimed abatement  $173.74  was the sum of the purchase price of that unit and 50% of the daily rent for the days when the central system was inoperable.
As to appellant Glennon, counsel stipulated that she sent a letter detailing the days she was without air conditioning and it was agreed that her arrearages were in the amount of $77.84. It was further agreed that her testimony as to the failure of air conditioning and attendant circumstances would generally be the same as other appellant witnesses.
On behalf of respondent landlord it was testified that if the apartments did not have air conditioning they would have had rentals 20% less than those actually charged. In the past respondent had employed three different companies to work on the central air conditioning system, and in 1975 switched to the Central Absorption Company with which he had an annual service contract. Bills for the major repairs undertaken in the summer of 1975 were in excess of $7,000. It was impossible to replace the entire system and thus parts were replaced as they would break down.
The president of Central Absorption testified to undertaking a preventive maintenance program for respondent and that on July 9 there was a major breakdown requiring 270 man-hours to repair the unit. It was testified that the burn-out of the motor and other problems were not readily anticipated and that it would be prohibitively expensive to replace the entire system.
The trial judge found from the proofs that 
On 11 days in July 1975 the central air conditioning system broke down and that on those days temperatures were in the 80s or 90s. There had been earlier problems in this regard and management was aware of them. As to this major 1975 breakdown the trial judge was "not satisfied that either the landlord or his contractor acted with unreasonable *276 slowness or in bad faith in this case. * * *" The judge also concluded that the involved system was "a matter of habitability as distinguished from an amenity." However, since respondent acted with reasonable dispatch in attempting to effectuate repairs (and there was no obligation on it to "replace the entire air conditioning system in this thirteen or fourteen year old building prior to the Summer of 1975") appellants were liable for full rentals. Judgment for possession was ordered.
The first question is whether the failure of an air conditioning unit with its consequent discomforts can breach the implied covenant of habitability. As delineated by Marini v. Ireland, 56 N.J. 130 (1970), every unpleasant condition found in a dwelling will not affect habitability. Many dwellings in this State are not air-conditioned. We are not addressed to any authority which categorically assays air conditioning as an element of habitability. The condition complained of must be of a quality to render the premises uninhabitable in the eyes of a reasonable person. Berzito v. Gambino, 63 N.J. 460 (1973). Respondent landlord argues that air conditioning in this case was but an amenity and that "air conditioning is but a luxury." We do not deem it controlling that the leasing contract contemplated the providing of air conditioning and that the rentals were higher because of it. There are many instances of breaches of the leasing agreement which would not affect habitability and thus would not be relevant in a dispossess action although they might very well be a proper basis for a separate cause of action for breach of contract.
Again, not every defect or inconvenience is deemed a breach of the covenant of habitability. Each case must be governed by its own facts. Berzito v. Gambino, supra at 470, sets forth several factors to be considered in determining whether there has in fact been a breach of the covenant of habitability on the part of the lessor. We are instructed that the Berzito list of factors is suggestive rather than exhaustive and includes 
*277 1. Has there been a violation of any applicable housing code or building or sanitary regulations?
2. Is the nature of the deficiency or defect such as to affect a vital facility?
3. What is its potential or actual effect upon safety and sanitation?
4. For what length of time has it persisted?
5. What is the age of the structure?
6. What is the amount of the rent?
7. Can the tenant be said to have waived the defect or be estopped to complaint?
8. Was the tenant in any way responsible for the defective condition?
[Berzito, at 470]
On this record we perceive sufficient credible evidence to support the trial judge finding that the air-conditioning failure for the stated days affected the habitability of the involved premises. However, we conclude that the judge, in denying abatement on the ground that the landlord made timely and reasonable efforts to cure the defect erred. In summary dispossess actions we deem that factor irrelevant and reverse.
It is now settled that the covenant on the part of a tenant to pay rent and the covenant, be it expressed or implied, on the part of a landlord to maintain the premises in a habitable condition are for all purposes mutually dependent. Thus, now, in an action by a landlord for unpaid rent a tenant may plead by way of defense and set-off the landlord's breach of his continuing obligation of an adequate standard of habitability. Additionally, a tenant, by separate action against the landlord, may plead the breach to recover either part or all of a deposit paid on delivery of the lease or part or all of the rent thereafter paid during the term where he alleges and proves that the lessor has broken his covenant to maintain the premises in a habitable condition. In the latter instance, as opposed to a summary dispossess matter, as a prerequisite to maintaining such a suit the tenant must give the landlord positive and seasonable notice of the alleged defect, must request its correction and then allow a reasonable period of time to effect the repair or replacements. Berzito, supra at 469.
*278 Accordingly, the judgment under review is reversed and the matter remanded to the county district court to determine the reasonable amount of rent owed. We add that the present record does not support the appellant Stoff's claim insofar as it includes the full purchase price of a new individual air conditioning unit as an element of abatement.
Reversed. We do not retain jurisdiction.