179 N.J. Super. 75 (1981)
430 A.2d 928
IRWIN W. CHESS, T/A MATILDA MANAGEMENT, PLAINTIFF-RESPONDENT,
v.
ABDUL MUHAMMAD, STEVEN PICKRAUM, CHARISE WHITE, JAMES GRIFFIN & DIANE MARTINEZ, CARLA SIMMONS, STANLEY WALKER, ELAINE COLLIER, DENISE MCCLYDE, DENISE ARTIS, LECY BOWSER, JOYCE CATO, ROBERT AND GLORIA ROBINSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 19, 1981.
Decided February 9, 1981.
*76 Before Judges BISCHOFF, MILMED and FRANCIS.
Essex-Newark Legal Services, attorneys for appellants (Sharon J. Rivenson on the brief).
Irwin W. Chess, respondent, filed brief pro se.
PER CURIAM.
In late September 1979 plaintiff, landlord of a multi-family dwelling, discovered that the boiler, which produced both heat and hot water, needed a major overhaul. Shortly thereafter he notified the tenants that the boiler would be shut down for a period of time and then commenced to make the necessary repairs. Because of the repairs the tenants were without heat and hot water from October 7 to October 14. Claiming a breach of habitability, several tenants withheld the next month's rent. Plaintiff then brought these actions for possession based on nonpayment of rent. The trial judge denied an abatement for the week during which the tenants were without heat and hot water on the theory that a landlord breaches his covenant of habitability only when he does not make repairs within a reasonable time after learning of the need to do so. Defendants appeal, contending that under Park Hill Terrace Assocs. v. Glennon, 146 N.J. Super. 271 (App.Div. 1977), cert. den. 74 N.J. 250 (1977), a tenant is entitled to an abatement in a summary dispossess proceeding even if the landlord made reasonable efforts to repair a vital facility.
*77 In New Jersey a landlord of residential premises impliedly covenants that at the inception of the lease there are no latent defects in facilities vital to the use of the premises because of faulty construction or deterioration from age or normal use, and further covenants that these facilities will remain in usable condition throughout the entire term of the lease. Marini v. Ireland, 56 N.J. 130, 144 (1970); Berzito v. Gambino, 63 N.J. 460, 466 (1973). However, both of these opinions limit the tenants remedy to cases where the landlord failed to make necessary repairs within a reasonable time. In Marini the court held that before a tenant can make necessary repairs and deduct the expense from subsequently accruing rent he must notify the landlord of the defective condition and afford the landlord the opportunity to repair. 56 N.J. at 146. Berzito imposes the same requirement before a tenant can recover damages for breach of the landlord's implied covenant of habitability. As the court stated therein:
... As a prerequisite to maintaining such a suit, the tenant must give the landlord positive and seasonable notice of the alleged defect, must request its correction and must allow the landlord a reasonable period of time to effect the repair or replacement. [63 N.J. at 469]
However, in Park Hill Terrace Assocs. v. Glennon, supra, the court held that a different rule applies in summary dispossess actions. In that case the air-conditioning system had been deteriorating since 1973. In May 1975 an officer of the tenants' association notified the landlord that the system should be repaired by the summer. The air-conditioning failed during a few days in June, and was in even worse shape in July. The tenants withheld portions of August's rent, claiming that they were entitled to an abatement for the landlord's breach of warranty of habitability for lack of air-conditioning in July. The trial judge found that the failure of the air-conditioning made the premises uninhabitable, but declined to award an abatement because the landlord had acted with reasonable dispatch in attempting to repair the system.
The Appellate Division held that the tenants were entitled to an abatement. The court reasoned:

*78 On this record we perceive sufficient credible evidence to support the trial judge finding that the air-conditioning failure for the stated days affected the habitability of the involved premises. However, we conclude that the judge, in denying abatement on the ground that the landlord made timely and reasonable efforts to cure the defect erred. In summary dispossess actions we deem that factor irrelevant and reverse.
It is now settled that the covenant on the part of a tenant to pay rent and the covenant, be it expressed or implied, on the part of a landlord to maintain the premises in a habitable condition are for all purposes mutually dependent. Thus, now, in an action by a landlord for unpaid rent a tenant may plead by way of defense and set-off the landlord's breach of his continuing obligation of an adequate standard of habitability. Additionally, a tenant, by separate action against the landlord, may plead the breach to recover either part or all of a deposit paid on delivery of the lease or part or all of the rent thereafter paid during the term where he alleges and proves that the lessor has broken his covenant to maintain the premises in a habitable condition. In the latter instance, as opposed to a summary dispossess matter, as a prerequisite to maintaining such a suit the tenant must give the landlord positive and seasonable notice of the alleged defect, must request its correction and then allow a reasonable period of time to effect the repair or replacements. [146 N.J. Super. at 277, citation omitted.]
The trial judge in this case was correct in concluding that Park Hill was factually distinguishable. There the landlord had ample notice of the defective condition and, although he tried to repair it, he was not successful. Here, on the other hand, the landlord effectively repaired the defective condition a very short time after he learned of its existence. Nonetheless, the court in Park Hill did not rest its decision on this ground. Rather, as argued by defendants, the case clearly stands for the proposition that a tenant need not allow the landlord a reasonable period of time to repair a vital facility in order to be entitled to an abatement.
Other jurisdictions which have considered this issue have split. Most hold that in order for a tenant to successfully assert a breach of implied warranty claim he must prove that the landlord had a reasonable time to repair the vital facility, but did not. Pugh v. Holmes, 486 Pa. 272, 405 A.2d 897, 906 (Sup.Ct. 1979); Knight v. Hallsthammar, 100 Cal. App.3d 267, 160 Cal. Rptr. 847, 856 (D.Ct.App. 1979); Quevedo v. Braga, 72 Cal. App.3d Supp. 1, 140 Cal. Rptr. 143, 147 (D.Ct.App. 1977); Hinson v. *79 Delis, 26 Cal. App.3d 62, 102 Cal. Rptr. 661, 666 (D.Ct.App. 1972); King v. Moorehead, 495 S.W.2d 65, 76 (Mo. App. 1973); Restatement, Property 2d (Landlord and Tenant), §§ 5.3, 5.4 and 5.5 (1977). Two jurisdictions hold otherwise, one by judicial decision, Berman & Sons, Inc. v. Jefferson, ___ Mass. ___, 396 N.E.2d 981 (Sup.Jud.Ct. 1979), and the other by statute. See Park West Management Corp. v. Mitchell, 47 N.Y.2d 316, 418 N.Y.S.2d 310, 391 N.E.2d 1288 (Ct.App. 1979), cert. den. 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979).
Sound arguments can be made for either approach. On the one hand, making the landlord strictly liable for any breakdown of vital facilities would impose obligations that realistically cannot be met. Even the most diligent landlord cannot prevent occasional interruptions in the livability of rented premises, whether due to the breakdown in mechanical facilities or sudden acts of nature. Furthermore, it can reasonably be maintained that neither party to a lease expects perfect maintenance; both realize that mechanical systems will occasionally break down, and it would be inconsistent to imply a term into the contract which was really not intended by the parties. Finally, making a landlord strictly liable might well discourage landlords from repairing vital facilities. Landlords may prefer to take the chance that the unrepaired system will continue to function, or that even if it does not and tenants withhold rent, the landlord's net loss would be less than if he made substantial expenditures in repairing the facility and at the same time lost rental income. A landlord may have no incentive to repair vital facilities if the tenants' rent will be abated in any event.
On the other hand, there is merit to the view that considerations of fault are irrelevant in an analysis of warranty. The point here is that the landlord has promised the tenant a habitable dwelling in exchange for a stipulated sum of rent. If the landlord fails to provide what he promised, why should the tenant not be entitled to an abatement?
Whatever the respective merits of these arguments, we are bound by the rule that in this State a landlord is entitled to *80 a reasonable time to repair. Berzito, supra, 63 N.J. at 469; Marini, supra, 56 N.J. at 146. It is illogical to say that a landlord must be given a reasonable time to cure the defect before a tenant can repair and deduct, or institute an action for overpaid rent, but not where the tenant seeks a rent abatement in a summary dispossess action. See C.F. Seabrook Co. v. Beck, 174 N.J. Super. 577, 592 (App.Div. 1980). The Park Hill case does not explain why a different rule should apply when the tenant seeks the abatement in a summary dispossess action, as distinguished from a suit for rent. If defendants in this case had paid November's rent and then sued plaintiff for breach of warranty in October, they could not have prevailed because Berzito requires allowance of a reasonable time to make the repair. If one accepts the Park Hill rationale a tenant's chance of success depends entirely upon the form of the action. Thus, we hold that tenants are not entitled to an abatement when the landlord repairs the defective condition within a reasonable time after learning of its existence.
Affirmed.