NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1049-15T1

LIZA ANNE HEIDT,

 Plaintiff-Respondent,

v.

NANCY CASTELINO,

 Defendant-Appellant,

and

LLOYD M. FERNANDES and ASTUTE
MANAGEMENT, INC.,

 Defendants.
—————————————————————————————————

 Submitted November 10, 2016 – Decided March 8, 2017

 Before Judges Hoffman and O'Connor.

 On appeal from Superior Court of New Jersey,
 Law Division, Somerset County, Docket No.
 DC-2690-15.

 Nancy Castelino, appellant pro se.

 McElroy, Deutsch, Mulvaney & Carpenter, LLP,
 attorneys for respondent (James M. Mulvaney,
 on the brief).

PER CURIAM
 Pro se defendant-landlord Nancy Castelino appeals from the

September 29, 2015 order of the Special Civil Part, entering

final judgment in favor of plaintiff-tenant Liza Anne Heidt for

$2,962.76. Following a bench trial, the judge awarded plaintiff

rent abatement and ordered defendant to credit plaintiff's

security deposit towards future rent payments. The judge also

awarded plaintiff attorney's fees. After reviewing the record

and applicable law, we affirm.

 I.

 We derive the facts from the trial record. Defendant owns

a five-bedroom, single-family rental home in Princeton. In May

2015, plaintiff and defendant signed a two-year lease agreement

for the home beginning on May 15, 2015. The lease set the rent

at $4,000 per month and required plaintiff to pay a $6,000

security deposit with the June 2015 rent. Plaintiff moved into

the premises in May with her three children, one of whom has

asthma.

 Plaintiff testified that on June 12, 2015, during a heat

wave, the thermostat in the home "wasn't working," fluctuating

between temperatures of eighty-eight to ninety degrees

Fahrenheit. Plaintiff emailed defendant at 5:36 p.m. to inform

her of the extreme heat and that the air conditioner was not

cooling the home. Plaintiff also contacted the energy and

 2 A-1049-15T1
thermostat companies, but they were unable to remedy the

situation. Receiving no response from defendant, plaintiff sent

an additional email at 1:07 p.m. the next day, informing

defendant that she scheduled a service appointment and planned

to deduct the fee from her rent. Michael J. Messick Plumbing &

Heating, Inc., (Messick) then repaired the air conditioning

system at a cost of $512.30 to plaintiff.

 Defendant finally responded to plaintiff's email at 3:52

p.m., stating she would not pay for the service call. When

plaintiff informed her the plumbing company already made the

repairs, defendant threatened legal action.

 Plaintiff testified she knew defendant's phone number and

had previously contacted her by phone. However, she stated

defendant told her not to contact her by text or phone, and "the

best correspondence from me to her . . . would be e-mail and I

did just that." Plaintiff said she never discussed with

defendant how to contact her in the case of an emergency.

Conversely, defendant testified she never told plaintiff that

she could not call her.

 On June 17, 2015, defendant entered the premises with a

technician to fix one of the toilets. According to plaintiff,

defendant described this as a "temporary fix." However, on July

8, 2015, the toilet became clogged and overflowed. Plaintiff's

 3 A-1049-15T1
attorney emailed defendant on this date1 and attached a letter

requesting repairs to the toilet, which he described as

"completely inoperable." When defendant did not respond,

plaintiff hired Messick to repair the toilet on July 10, 2015,

at a cost of $335.75.

 Plaintiff further testified she paid the required $6,000

security deposit. Plaintiff said she never received notice of

the interest rate or the address of the bank holding the

deposit. On July 10, 2015, defendant sent plaintiff's counsel a

letter, stating she provided the location of the security

deposit on the first page of the lease, that plaintiff could

verify the deposit from a cancelled check, and that she sent a

notice of deposit status on June 5, 2015. Defendant attached a

reproduction of the June 5 notice, which contained the interest

rate and bank address.

 Plaintiff filed her initial complaint on or about July 10,

2015. On July 20, 2015, plaintiff filed an amended complaint

against defendant, defendant's husband, and Astute Management,

Inc., a corporation defendant organized to collect rent. In

count one of her amended complaint, plaintiff asserted claims

for breach of the implied warranty of habitability and breach of

1
 Plaintiff's complaint incorrectly states her attorney
informed defendant of the toilet issue on July 9, 2015.
However, the record shows plaintiff's counsel sent the email
containing this notice on July 8.
 4 A-1049-15T1
contract, seeking, in part, rent abatement of $848.05 for

repairs to the air conditioner and the toilet. In count two,

plaintiff sought a declaratory judgment crediting the $6,000

security deposit, plus interest, towards her rent payments.

Plaintiff claimed defendant violated N.J.S.A. 46:8-19 by failing

to provide her with the security deposit's interest rate and the

address of the bank holding the deposit. Plaintiff also

asserted trespass and breach of contract (count three); unjust

enrichment (count four); and consumer fraud, in violation of

N.J.S.A. 56:8-1 to -204 (count five).

 Defendant's husband filed an answer to the initial

complaint but did not answer the amended complaint; both

defendant and the corporation failed to answer either complaint.

On July 30, 2015, defendant sent plaintiff a notice to quit. 2

This notice terminated the lease and demanded plaintiff vacate

the premises by August 31, 2015.

 Despite defendants' failure to answer the complaint, the

parties agreed to proceed to trial. On September 9, 2015, the

court heard testimony from plaintiff, her realtor, a plumber

from Messick, and defendant. The next day, the trial judge made

findings of fact and issued an oral decision from the bench.

2
 Defendant had previously sent plaintiff a notice to cease on
July 5, 2015.
 5 A-1049-15T1
 Addressing plaintiff's claims of habitability and breach of

contract, the judge found section nine of the lease required

defendant to make repairs to the plumbing, heating, and

electrical systems, and therefore, plaintiff was entitled to a

rent abatement for the repairs to the air conditioning. The

judge further noted the home "would have been uninhabitable

without the repair," finding plaintiff acted reasonably by

making necessary repairs after defendant did not respond for

three-quarters of a day. The judge therefore awarded plaintiff

$512.30 for the cost of repairs and an additional $133.33,

equivalent to one day's rent, for the "one day that the premises

were effectively uninhabitable."

 The judge also awarded plaintiff the $335.75 cost of

repairs for the toilet. The judge noted, "[W]ith this kind of

rental you would expect that the plumbing systems, the toilets

are functioning and working." He described "the repair and the

amount" as "fair and reasonable and necessary."

 Regarding count two of plaintiff's amended complaint, the

judge rejected defendant's argument that she appropriately

notified plaintiff of the interest rate and location of her

security deposit. The judge found inadequate notice on the

first page of the lease, which only stated the deposit was in

the care of a Chase Bank in Hillsborough and did not list the

 6 A-1049-15T1
interest rate. The judge also determined plaintiff was not

obligated to do "investigatory work" by looking for the bank

location on the security deposit check. Last, the judge found

there was no evidence defendant mailed plaintiff the notice of

deposit on June 5, 2015, finding defendant's purported evidence

was an "afterthought to cover the fact" that she failed to

provide adequate notice.

 The judge declined to enter judgment against defendant's

husband, concluding he was not a responsible party because he

was not on the lease. The judge also dismissed the count

against the corporation and dismissed counts three and five of

the amended complaint.

 Following trial, plaintiff filed an application for

attorney's fees. Defendant opposed the application and raised

new issues challenging the court's decision. On September 29,

2015, the court issued a written opinion explaining its

$1,981.38 award for attorney's fees and rejecting defendant's

additional arguments. The court also entered an order granting

final judgment in favor of plaintiff for $981.38 on counts one

and four of her amended complaint. The order further required

defendant to credit plaintiff $6,117.60 from her security

deposit towards her future rent payments, and precluded

defendant from requiring any additional security deposit for the

 7 A-1049-15T1
remainder of the tenancy. Last, the order awarded plaintiff

attorney's fees. This appeal followed.

 II.

 The scope of our review of a non-jury case is limited.

Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011).

The findings on which a trial court bases its decision will "not

be disturbed unless they are so wholly insupportable as to

result in a denial of justice." Rova Farms Resort, Inc. v.

Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (citations

omitted). On the other hand, although a trial court's factual

findings will not be overturned absent an abuse of discretion,

questions of law are subject to de novo review. Balsamides v.

Protameen Chems., Inc., 160 N.J. 352, 372 (1999).

 Defendant raises sixteen overlapping arguments in her

briefs on appeal, several of which she failed to raise before

the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J.

229, 234 (1973). However, we discern three main contentions

that merit brief discussion, specifically, defendant's

challenges of the trial court's findings on (1) habitability and

breach of contract, (2) the security deposit, and (3) attorney's

fees. Defendant also raises additional arguments that merit

brief discussion. We address these issues in turn.

 8 A-1049-15T1
 The seminal case on the issue of rent abatement is Berzito

v. Gambino, 63 N.J. 460 (1973). Our Supreme Court held all

residential leases contain an "implied covenant or warranty of

habitability." Id. at 467. Accordingly, a tenant may initiate

an action to recover part or all of the rent paid to his

landlord "where he alleges the [landlord] has broken his [or

her] covenant to maintain the premises in a habitable

condition." Id. at 469. In order to succeed on the claim,

"[t]he condition complained of must be such as truly to render

the premises uninhabitable in the eyes of a reasonable person."

Ibid. "At a minimum, the necessities of a habitable residence

include sufficient heat and ventilation, adequate light,

plumbing and sanitation and proper security and maintenance."

Trentacost v. Brussel, 82 N.J. 214, 225 (1980). However, a

tenant must also provide his landlord with notice and sufficient

time to effectuate repairs. Berzito, supra, 63 N.J. at 469.

 Defendant provides several arguments challenging the

judge's determinations on habitability. In essence, defendant

asserts the broken air conditioner did not create an urgent

situation and that plaintiff did not prove the premises were

uninhabitable. Defendant also argues plaintiff should have

called or texted her, she responded to plaintiff's emails within

 9 A-1049-15T1
the appropriate amount of time, and plaintiff did not give her

sufficient time to inspect and repair the malfunctions.

 We reject these arguments. The trial judge's determination

on rent abatement "is a factual finding and will be affirmed if

supported by credible evidence in the record." C.F. Seabrook

Co. v. Beck, 174 N.J. Super. 577, 596 (App. Div. 1980). In the

instant matter, the judge determined the air conditioner

malfunction — during temperatures of up to ninety degrees —

rendered the premises "uninhabitable" and that plaintiff acted

reasonably by hiring a repair company after she did not receive

a prompt response from defendant. The asthma of plaintiff's son

further exacerbated the situation. Moreover, plaintiff

testified defendant preferred she contact her by email. Given

these circumstances, we decline to disturb the trial judge's

finding that the premises were uninhabitable and that plaintiff

provided defendant with adequate notice.

 Defendant further argues the court erred by "considering

bills that were not presented to [the] landlord," alleging

plaintiff failed to present her with the actual bills for the

repairs until trial. However, plaintiff set forth these amounts

in her amended complaint; therefore, the court properly

considered these bills during trial.

 10 A-1049-15T1
 Next, defendant asserts the trial court erred in its

interpretation of plaintiff's right to repair under sections

nine, ten, and eleven of the lease. We disagree. Section nine

requires defendant to repair the plumbing, heating, and

electrical systems, and only makes plaintiff responsible for

repairs resulting from her own negligence. Section ten

similarly requires plaintiff to "pay" for all repairs made

necessary by her negligence. Section eleven bars plaintiff from

making "changes or additions" without defendant's consent,

including "renovation[s] to the plumbing . . . [or] air-

conditioning." Here, the trial court determined plaintiff did

not cause the need for the repairs. Moreover, plaintiff did not

"renovat[e]" these appliances, but made necessary repairs to

render the property habitable. We will not disturb the trial

court's findings on this basis.

 Defendant also argues the court erred by failing to

consider the loss and notice provisions in the lease. Defendant

did not raise these arguments before the trial court. See

Neider, supra, 62 N.J. at 234. Nevertheless, we find they lack

merit. The loss provision states that if only part of the house

is uninhabitable, the tenant shall pay the landlord "on a

proportional basis." Here, because the trial judge found the

broken air conditioner rendered the entire premises

 11 A-1049-15T1
uninhabitable, he appropriately ordered abatement for a full

day's rent. Similarly, the notice provision required plaintiff

to send "[a]ll notices given under this Lease" to defendant's

address by personal delivery or certified mail. As noted, the

parties agreed to communicate by email; parties may modify a

contract by their actions or conduct. See, e.g., DeAngelis v.

Rose, 320 N.J. Super. 263, 280 (App. Div. 1999). We discern no

error here.

 We turn next to the court's findings regarding plaintiff's

security deposit. Defendant argues the trial court assumed

"facts not in evidence" when it determined defendant did not

provide adequate notice pursuant to N.J.S.A. 46:8-19. The

statute provides:

 The person investing the security deposit
 . . . shall notify in writing each of the
 persons making such security deposit or
 advance, giving the name and address of the
 . . . bank . . . in which the deposit . . .
 is made, the type of account in which the
 security deposit is deposited or invested,
 the current rate of interest for that
 account, and the amount of such deposit or
 investment, in accordance with the
 following:

 (1) within 30 days of the receipt of the
 security deposit from the tenant; . . . .

 [N.J.S.A. 46:8-19(c).]

 Here, the lease only stated the deposit was held by a Chase

Bank in Hillsborough; it did not list the bank's address or the
 12 A-1049-15T1
deposit's interest rate. Moreover, plaintiff testified she

never received notice of the deposit by mail. The trial court

reviewed the testimony of both parties and found plaintiff

credible. Therefore, the trial court ordered the appropriate

remedy under N.J.S.A. 46:8-19(c).

 Defendant also argues plaintiff did not establish the exact

date she paid the security deposit, and therefore, the court had

no basis to determine defendant failed to comply with the

statute's thirty-day requirement. See N.J.S.A. 46:8-19(c)(1).

However, defendant claimed she sent plaintiff the notice of

deposit on June 5, 2015, meaning defendant received the deposit

on or before this date. Therefore, the court did not err by

determining defendant did not meet the thirty-day requirement.

 Last, defendant argues she was not required to notify

plaintiff because plaintiff's fiancé actually issued the check

containing the security deposit. Although defendant noted that

plaintiff's fiancé paid the deposit in her notice to quit, she

maintained that she provided adequate notice to plaintiff.

Under the "doctrine of invited error," we will "bar a

disappointed litigant from arguing on appeal that an adverse

decision below was the product of error, when that party urged

the lower court to adopt the proposition now alleged to be

 13 A-1049-15T1
error." Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 503

(1996). We decline to reverse on this basis.

 Next, we turn to the issue of attorney's fees. The court

awarded plaintiff $1,981.38 in attorney's fees pursuant to

N.J.S.A. 2A:18-61.66, which states:

 If a residential lease agreement
 provides that the landlord is or may be
 entitled to recover either attorney's fees
 or expenses, or both, incurred as a result
 of the failure of the tenant to perform any
 covenant or agreement in the lease . . . the
 court shall read an additional parallel
 implied covenant into the lease. This
 implied covenant shall require the landlord
 to pay the tenant either the reasonable
 attorney's fees or the reasonable expenses,
 or both, incurred by that tenant . . . as
 the result of any successful action or
 summary proceeding commenced by the tenant
 against the landlord, arising out of the
 failure of the landlord to perform any
 covenant or agreement in the lease.

 The court shall order the landlord to
 pay such attorney's fees . . . to the same
 extent the landlord is entitled to recover
 attorney's fees . . . as provided in the
 lease. . . .

 In its written opinion, the court found an implied parallel

covenant based on section five of the lease, which provides:

 The Tenant is liable for any and all damages
 which Tenant causes by violating any
 terms/agreement or moves prior to the end of
 the lease period. Penalty includes one
 month's rent for breach of contract, plus
 loss of rent, the cost of preparing the
 property for re-renting, brokerage
 commission in finding a new tenant include
 14 A-1049-15T1
 reasonable attorney's fees and costs of
 collection. . . .

The court determined, because plaintiff "commence[d] and

successfully prosecuted such an action" against defendant,

plaintiff was entitled to reasonable attorney's fees.

 We discern no error regarding the award of attorney's fees

to plaintiff. The statute provides for attorney's fees if a

tenant successfully pursues an action arising from a landlord's

failure to "perform any covenant or agreement in the lease" and

permits recovery "to the same extent" as the landlord. N.J.S.A.

2A:18-61.66. Here, defendant breached the warranty of

habitability and failed to perform the required repairs under

the lease. The lease permitted defendant to recover attorney's

fees where plaintiff violated any terms or agreements in the

lease. Therefore, plaintiff's motion for fees satisfied the

statutory criteria.

 Finally, we address defendant's miscellaneous arguments.

Defendant first contends plaintiff perjured herself by

testifying she did not own a second residence at the time the

air conditioner malfunctioned. Defendant premised this

allegation upon a deed and insurance application, showing

plaintiff and her ex-husband transferred their former home to

new owners on June 22, 2015, several days after the air

conditioner incident. Defendant is apparently suggesting
 15 A-1049-15T1
plaintiff could have gone to this other home when the air

conditioner malfunctioned, and therefore, she had no valid

reason to make immediate repairs.

 This argument lacks merit. Although plaintiff apparently

still held legal title to this other property, she testified she

was "clearly no longer residing" there. Indeed, her entire

purpose in renting defendant's property was because she could no

longer reside in her former marital home. Moreover, the

availability of other lodging provides no defense to a breach of

the warranty of habitability.

 Defendant next argues the trial court erred by placing an

"[u]ndue burden of proof" on her to rebut plaintiff's

allegations of other damaged appliances, including the

dishwasher, lights, and sliding door. However, because the

trial court did not render judgment on these issues, we decline

to consider them here.

 Next, defendant argues the trial court erred by failing to

consider the answer filed by defendant's husband. This argument

lacks merit. Defendant's husband did not answer plaintiff's

amended complaint; nevertheless, the parties agreed to proceed

to trial, where both defendant and her husband had the full

opportunity to cross-examine plaintiff's witnesses. Following

the testimony, the court dismissed the complaint against

 16 A-1049-15T1
defendant's husband. We find the trial court fully considered

the arguments of both defendants.

 Last, defendant lists several alleged improprieties by

plaintiff's counsel, which she argues amounted to "fraud on the

court." These arguments lack sufficient merit to warrant

discussion in a written opinion. See R. 2:11-3(e)(1)(E). We

discern no evidence of unethical behavior by plaintiff's counsel

or the trial court.

 Similarly, any remaining arguments we did not specifically

address lack sufficient merit to warrant discussion in a written

opinion. See R. 2:11-3(e)(1)(E).

 Affirmed.

 17 A-1049-15T1