OPINION OF THE COURT
Theodore Diamond, J.
In this nonpayment proceeding, where tenants paid no rent for months, respondents’ attorneys move for summary judgment. Tenants’ rent is subsidized by the Federal Government’s section 8 program (US Code, tit 42, § 14371); and because of failure to comply with Federal statutes and regulations, the landlord cannot evict them for not paying the small portion of their rent not paid by the taxpayers. After hearing oral argument, studying the memoranda submitted, and considering the legislative history of the Housing and Community Development Act of 1974 (US Code, tit 42, § 5301 et seq.), the motion is granted with great reluctance. Consideration of the issues suggests that the “excesses” associated with “Great Society” programs still flourish, even into the era of Reaganomics and the “New Federalism”.
Petitioner landlord served respondent tenants with notice of petition and petition in March, for the too-logical reason that respondents had not paid rent. A notice of appearance and verified answer was served by Washington Square Legal Services, Inc., alleging four affirmative defenses (with eight specifications), and three counterclaims. It is clear that Washington Square Legal Services, Inc. is providing respondents with advocacy of a high calibre. After all, it is common litigating strategy for major law firms to assert frivolous and meretricious defenses on *82 behalf of corporate or wealthy clients, and we should not begrudge Mark and Lydia Lewis their opportunity to enjoy the “legal high-life”, although this means that productive members of American society are not only subsidizing their housing services, but also, their legal services.
Now come forth respondents with a motion for summary judgment, relying on the second affirmative defense* which argues that because of a statutory provision; another provision in the Code of Federal Regulations; and a stipulation of settlement entered into by General Counsel Michael Cohen of the New York City Housing Authority, David Goldfarb of Bronx Legal Aid Society; and a Federal District Court order, it is impossible for any landlord to evict any of the tens of thousands of section 8 subsidized tenants in New York City, whether or not they pay their small part of the rent, whether or not they are undesirable, or even dangerous. Let us follow their reasoning.
This program was created by the Housing and Community Development Act of 1974, amending the United States Housing Act of 1937 (50 US Stat 888). The “Lower Income Rental Assistance Program” was an expansion of the section 23 leasing program enacted in the Housing and Urban Development Act of 1965 (79 US Stat 451).
In New York City, the Housing Authority contracts with private landlords or developers to subsidize most of the tenant’s rent by direct payments to the landlord — these subsidies may go as high as $800 a month, or $9,600 a year. In some cases, the subsidies are higher than total tenant income. Incidentally, this subsidized housing often has amenities associated with luxury housing. For the best evaluation of the program, see the report of the United States General Accounting Office (Section 8 Subsidized Housing — Some Observations on its High Rents, Costs And Inequities, CED-80-59), which fully identifies the waste, improprieties and “bail-out” aspects of the New York City program. For additional evidence of the problems, see the following reports by the General Accounting Office (CED-80-31, Dec. 19, 1979; CED-81-41, Feb. 26, 1981; CED-79-51, March 1,1979; CED-79-44, Feb. 5,1979; CED-77-19, Jan. 28, 1977; PAD-79-43, Jan. 16, 1979). *83 “Housing laws today represent an accumulation of authorizations for some forty-six unsubsidized and twenty subsidized programs * * * there exist inconsistencies, duplications, lack of coordination, abuses, and inadequate monitoring of program activities” (CED-80-139, Sept. 24, 1980, p 29; PAD-80-13, Sept. 30, 1980).
For reasons we must assume, Congress apparently wanted to assure that those subsidized by the section 8 program could not arbitrarily, or easily, be evicted. There are some plausible antecedents for this:
(1) Over the years, statutory law, case law and administrative practices made it almost impossible for undesirable tenants to be evicted from low-income public housing projects.
(2) People who get subsidies are protected by constitutional “fair hearing” requirements movants state, just like “welfare benefits”.
(3) Since some section 8 buildings are in improving neighborhoods, it would be wrong to allow participant landlords to easily evict section 8 tenants and then convert the building to a nonsection 8 property.
(4) Some owners might try to drive out section 8 tenants because the tax shelter benefits are reduced and they can get a better price selling it without section 8 tenants.
(5) Since the section 8 tenants were screened by the Housing Authority, they should have some authority for terminating them.
Thus, the 1974 statute (US Code, tit 42, § 1437f, subd [d], par [1], cl [B]) requires that “the agency [Housing Authority] shall have the sole right to give notice to vacate, with the owner [landlord] having the right to make representation to the agency for termination of tenancy”. Read literally, this might require the Housing Authority to commence all eviction proceedings. Perhaps because this appeared unworkable to Department of Housing and Urban Development (HUD) administrators, they adopted implementing regulations (24 CFR 882.215, incorporated in the lease), saying that the owner may evict in accordance *84 with local law, but after giving tenants written notice, and sending a copy to the Housing Authority which, after opportunity to tenants to be heard, must examine the grounds for eviction and authorize it if it is legal under the lease. But this regulation has been invalidated because it is inconsistent with the statutory provision.
Movant’s position provides us, not with a “Catch 22”, but a “Catch 55”.
First, landlord did not comply with the provisions in the CFR.
Second, even if landlord and Housing Authority did comply with the CFR provisions, this would be ineffective because the regulation was inconsistent with the statute.
Third, Housing Authority cannot authorize an eviction until new and correct CFR regulations are approved.
Fourth, because of the stipulation, the Housing Authority cannot approve evictions except in very rare cases.
Fifth, a United States District Court order, and the afore-mentioned stipulations, “orders” that the New York City Housing Authority may not give eviction authorizations to private landlords (Williams v NYCHA, 81 Civ 1801 [Ward, J.]). The Williams case involved a situation where the Housing Authority itself, not the landlord, cut off subsidy benefits to Ms. Williams because she had not paid rent to a previous owner of the building. That case was brought by Bronx Legal Aid, and the society’s law reform unit in Manhattan.
Movants cite two prior Civil Court cases which also dismissed eviction proceedings against section 8 tenants (Ansel v Wilson, Civil Ct, Bronx County, L & T Part, Index No. 99638/81; Fishel v Rolls, Civil Ct, Kings County, L & T Part). I do not follow language in those decisions which implies that the petition itself must allege compliance with section 8 procedures. Petitions are already so long that tenants barely understand them. For example, if a housing project had the benefit of three or four subsidy programs — as many do — would the petitioner have to allege compliance with each?
*85 However, on the other, more important, and dispositive issues, I must reluctantly grant respondents’ motion for summary judgment.