269 N.J. Super. 151 (1993)
634 A.2d 1057
MICHAEL SOLIMAN, PLAINTIFF,
v.
ROCIO CEPEDA AND BERGEN COUNTY HOUSING AUTHORITY, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 20, 1993.
*154 Thomas F. DiLullo for plaintiff (DiLullo, Sweeney & Cattani, attorneys; Mr. DiLullo, on the brief).
Daniel J. Cronin for defendant Rocio Cepeda, Bergen County Legal Services, (Richard S. Semel, Director, attorneys).
Terrence J. Corriston for defendant Bergen County Housing Authority (Breslin & Breslin, attorneys).
KOBLITZ, J.S.C.
Plaintiff Michael Soliman brings this summary dispossess action against defendants, Rocio Cepeda and Bergen County Housing Authority, for non-payment of rent under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12. This case involves issues which our courts have not yet addressed. First, may a landlord evict a tenant who has paid her share of rent under an Assisted Lease Agreement solely because a public housing authority has not paid its share under a Housing Assistance Payments Contract made pursuant to Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f? Second, may a landlord bring an action in landlord-tenant court against a public housing authority which has only contracted to provide assistance payments but not leased the premises?
On November 19, 1991, plaintiff and defendant entered into an Assisted Lease Agreement (lease), pursuant to § 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f (§ 8), in which defendant Cepeda "as Tenant agreed to pay $19.00 per month to the Landlord as the tenant rent." Paragraph 1(D)(3) of the lease provides that the "total rent shall be $973.00 per month. Of this amount, $954 shall be payable by the Public Housing Authority (PHA) as housing assistance payments on behalf of the Tenant." The lease does not expressly state that defendant Cepeda is responsible for PHA's portion of the rent.
On or about the same date, plaintiff and defendant Bergen County Housing Authority (BCHA), as an authorized PHA, entered into a Housing Assistance Payment Contract (contract) in *155 which "the amount of the housing assistance payment shall be $954.00 per month." The contract states that "[n]either the PHA nor the Department of Housing and Urban Development (HUD) assumes any obligation for the tenant rent... [t]he obligation of the PHA is limited to making housing assistance payments on behalf of the Family in accordance with [the] Contract."
In November 1992, pursuant to the contract and HUD's regulations, BCHA inspected defendant Cepeda's unit and notified plaintiff, by mail, that the unit failed to meet HUD's standards and that he had thirty days to bring it into compliance. According to the lease, once the thirty days pass and the landlord still has not made repairs, the landlord forfeits his entitlement to BCHA's monthly assistance payment.
Plaintiff did not notify BCHA until February 17, 1993, that the unit was ready for reinspection. By that time, BCHA would not make retroactive payments and notified him of such. During this entire time and up until the date of trial, defendant Cepeda continued to pay her share of the rent. Plaintiff therefore brings this summary dispossess action based solely on BCHA's non-payment of its share of the December 1992, and January 1993, rent.
Section 8 provides for rental assistance to low-income tenants. Its purposes are to provide safe, sanitary, and decent housing to low-income families and to promote economically mixed housing. See Bakos v. Flint Housing Commission, 746 F.2d 1179 (6th Cir.1984); Mitchell v. U.S. Department of Housing and Urban Development, 569 F. Supp. 701 (N.D.Cal. 1983).
Section 8 authorizes the Secretary of HUD to enter into annual contributions contracts with local PHA's so that they may "make assistance payments to owners of existing dwelling units." 42 U.S.C.A. § 1437f(b). A PHA may therefore contract with an owner of existing housing through a contract. Section 8 also authorizes HUD to specify the terms and conditions for a lease *156 between the tenant and the owner. 42 U.S.C.A. § 1437f(d)(1)(B)(i).
HUD provides a form lease and a form contract with terms and conditions which incorporate applicable portions of § 8 and HUD's regulations. Both forms establish what the full monthly rent will be. The lease, however, only obligates the tenant to pay a portion of the rent and merely states that the PHA is responsible for the remaining portion. Similarly, the contract only obligates the PHA to pay the remaining portion of the rent and states that the tenant is responsible for the other portion.
Both forms also contain provisions which relate to the goal of providing safe and decent housing. HUD's regulation, 24 C.F.R. § 882.109, provides a list of "acceptable" housing standards. To ensure that the landlord meets these standards, HUD authorizes the PHA to make annual inspections. 24 C.F.R. § 882.211(b). The contract and lease incorporate this right to inspect.
Although each agreement exists separately because it binds different parties separately, the agreements are also interdependent because the termination of one agreement necessarily terminates the other. A termination of the lease relieves the PHA of its contractual obligation to pay its portion of the rent. Similarly, under ¶ (H)(4) of the lease, the termination of the contract terminates the lease. Upon termination of the contract, if the tenant continues in possession she becomes a holdover tenant liable for the full rent on a month-to-month basis.
The landlord may only terminate the lease if he can satisfy ¶ (H) of the lease which corresponds to § 8, 42 U.S.C.A. § 1437f(d)(1)(B)(ii). Both § 8 and ¶ (H) provide that the landlord shall not terminate the tenancy except for:
(i) Serious or repeated violation of the terms and conditions of the Lease;
(ii) Violation of Federal, State, or local law which imposes obligations on a tenant in connection with the occupancy or use of the dwelling unit and surrounding premises; or
(iii) Other good cause.
*157 Examples of "other good cause," pursuant to the lease and 24 C.F.R. § 882.215(c)(2), include a tenant's refusal to accept a new lease approved by the PHA, a history of disturbance of neighbors or destruction of property, criminal activity, and a landlord's desire to occupy the unit personally or for a commercial purpose.
Plaintiff argues that non-payment of rent is a violation of the lease regardless of who has the obligation to pay it. He argues that non-payment of rent constitutes good cause under the Anti-Eviction Act. N.J.S.A. 2A:18-61.1(a).
When Congress does not show an intention to preempt state law, federal law provides the minimum requirements that a plaintiff must meet. Here, Congress has expressly provided that state law may provide cause for termination of a lease. See 42 U.S.C.A. § 1437f(d)(1)(B)(ii) (emphasis added), in which a landlord may evict a tenant for a violation of "any applicable Federal, State or local law." See also Mitchell v. U.S. Dept. of Housing & Urban Development, 569 F. Supp. 701, 709 n. 3 (N.D.Cal. 1983) (the provision "is intended to minimize the disturbance of the private relationship under State law between the unit owner and the tenant" (citing S.Rep. 97-139, 97th Cong., 1st Sess. 256, U.S.Code Cong. & Admin.News 1981, 396, 552). State law may therefore impose more stringent standards on landlords than federal law as long as they are not inconsistent with the federal law. Attorney General v. Brown, 400 Mass. 826, 511 N.E.2d 1103 (1987) (Section 8, which provides for voluntary participation, did not preempt Massachusetts law which requires participation absent some valid nondiscriminatory reason); and R & D Realty v. Shields, 196 N.J. Super. 212, 482 A.2d 40 (Law Div. 1984) (plaintiff had to satisfy "good cause" standard under HUD regulations and also "reasonable rent increase" standard of New Jersey's Anti-Eviction Act). See also Housing Authority of Newark v. Scott, 137 N.J. Super. 110, 348 A.2d 195 (App.Div. 1975) (PHA, as landlord under Section 8, was subject to uninhabitability defense of Marini v. Ireland, 56 N.J. 130, 265 A.2d 526 (1970)). Plaintiff must therefore satisfy both the federal standards of good cause for termination as well as *158 New Jersey's standards under the Anti-Eviction Act. N.J.S.A. 2A:18-61.1 et seq.
Under the federal standards, plaintiff cannot evict defendant Cepeda. Defendant Cepeda has not engaged in any "serious or repeated violation of the terms of the Lease." 42 U.S.C.A. § 1437f(d)(1)(B)(ii). She has paid her portion of the rent as required by the Lease. The parties clearly intended BCHA to pay the contract rent of $954.00 directly to plaintiff. Holding defendant Cepeda responsible for paying the full amount by allowing an eviction for BCHA's non-payment would contradict this intention. Liqui-Box Corp. v. Estate of Elkman, 238 N.J. Super. 588, 600, 570 A.2d 472 (App.Div. 1990), cert. denied, 122 N.J. 142, 584 A.2d 214 (1990) (In interpreting lease agreement, function of court is to enforce lease as written, not to write different or better contract for parties).
Plaintiff also does not have "good cause" for eviction because of non-payment of rent by BCHA. 42 U.S.C.A. § 1437f(d)(1)(B)(ii). A landlord can not have good cause for eviction when his own inaction leads to a PHA's non-payment of rent.[1]See e.g. Vanderveer Associates No. 5 v. Lewis, 114 Misc.2d 81, 450 N.Y.S.2d 709 (N.Y.City Civ.Ct. 1982). HUD's examples of "good cause" generally point to some kind of fault on the tenant's part; they make no mention of any cause based on the conduct or fault of a third party payor. HUD did not intend a landlord's negligent conduct to constitute good cause for eviction. In this case, neither Cepeda nor BCHA acted with fault. Rather, plaintiff's conduct, i.e. his failure to provide safe and decent housing as determined by BCHA, resulted in the non-payment of rent. Plaintiff therefore does not satisfy the "good cause" standard as intended by HUD.
*159 Finding good cause for eviction in this situation would also defeat Congress' goal to provide safe and decent low-income housing. Plaintiff, as well as other landlords, would have no incentive to maintain their rental units in safe and decent conditions if they could still receive full rent even upon a failure to meet HUD standards.
Plaintiff's eventual compliance with HUD's standards for safe housing does not rectify his breach and entitle him to back rent. Not paying rent for the months in which a landlord does not comply with the regulations is an effective way to carry out Congress' goal because it forces the landlord to make repairs as soon as possible. Thus, if a landlord, such as plaintiff here, fails to immediately (i.e., within 30 days) make repairs he loses his right under the Contract and HUD's regulations to receive any payment for those months in which he failed to comply.[2] Plaintiff has thereby lost his right to receive payment from BCHA for the months of December, 1992 and January, 1993.
Plaintiff also fails to show a violation of any applicable Federal, State or local law as a ground for eviction under 42 U.S.C.A. § 1437f(d)(1)(B)(ii). Plaintiff alleges that defendant Cepeda has violated New Jersey's Anti-Eviction Act, N.J.S.A. 2A:18-61.1(a), which provides that non-payment of rent constitutes good cause for eviction. However, for the reasons already discussed in this opinion and because finding "good cause" under the Anti-Eviction Act results in a conflict with Section 8, defendant Cepeda has not violated the Anti-Eviction Act.
Because he has not shown that defendant Cepeda violated a material term of the Lease, violated Federal, State or local law or that good cause for termination of the Lease exists, the court will not enter a judgment for possession against defendant Cepeda and dismisses the complaint as to her.
*160 For plaintiff's complaint against defendant BCHA to prevail, a landlord-tenant relationship must exist between the parties. Plaza Road Cooperative, Inc. v. Finn, 201 N.J. Super. 174, 492 A.2d 1072 (App.Div. 1985); Cahayla v. Saikevich, 119 N.J. Super. 116, 290 A.2d 311 (Bergen Cty.Ct., 1972). Had Congress intended to create a landlord-tenant relationship, it would have used the word "Lease," instead of "Contract," as it did to cover the relationship between plaintiff and defendant Cepeda. Congress therefore could not have intended such a relationship.
In addition, neither the Lease nor the Contract confer possession of the premises to defendant BCHA (which would allow BCHA to transfer possession to defendant Cepeda either as a sublease or assignment). Because defendant BCHA has no right to possession and never had such right, no landlord-tenant relationship exists. See Town of Kearny v. Municipal Sanitary Landfill Authority, 143 N.J. Super. 449, 363 A.2d 390 (Law Div. 1976) (Lease vests exclusive possession in tenant for term even as against owner in fee; less than exclusive possession militates against finding of landlord-tenant relationship).
Only a contractual relationship  not a landlord-tenant relationship  exists between plaintiff and defendant BCHA. Without a landlord-tenant relationship, the court does not have jurisdiction to hear the case as against defendant BCHA.[3] The court therefore dismisses plaintiff's complaint as against defendant BCHA.
NOTES
[1] In fact, plaintiff's complaint for eviction may constitute reprisal against defendant BCHA and defendant Cepeda for BCHA's enforcement of the federal housing standards. Such reprisal would be unlawful under N.J.S.A. 2A:42-10.10.
[2] The court notes that plaintiff was fortunate to receive the full month's rent for February, 1993 when he did not notify BCHA that the apartment was ready for reinspection until mid-February.
[3] Failure to satisfy this court's jurisdictional requirements does not preclude plaintiff from proceeding in a different court which would have jurisdiction over a contract dispute.