OPINION OF THE COURT
Joseph E. Damrath, J.
*903 This is a summary proceeding brought pursuant to Real Property Actions and Proceedings Law § 711 (3) alleging nonpayment of rent.
The petition and notice of petition dated August 8, 2003 were filed on the third day of September 2003. Subsequently, the respondent filed a motion to dismiss alleging, inter alia, that tenant’s rent is subsidized by the federal government’s section 8 program, administered by Tri-County Housing, and further alleging that the landlord petitioner violated the tenancy by failing to keep the apartment up to housing quality standards (HQS) as promulgated under federal regulations, and further that the landlord petitioner violated New York State’s warranty of habitability. A hearing on these issues was held on the 29th day of October 2003.
The respondent and Tri-County commenced their section 8 lease (42 USC § 1437 et seq.) with the petitioner in September of 2001. The premises were inspected at that time and passed. The respondent has been in possession and control of the premises ever since. In June of 2002, the petitioner paid to repair a broken window, sink and faucet on the subject premises. In July of 2002, the petitioner paid to repair a hole in the wall at the premises. In November of 2002, and once again in January of 2003, the petitioner paid to repair the furnace.
On June 17, 2003, the subject premises were inspected by HQS inspector, Melissa Seeley, who thereafter wrote a letter to the petitioner dated June 18, 2003 (respondent’s hearing exhibit B), directing that certain repairs were needed to the premises, to wit:
“Kitchen: All burners in oven must light on own.
“Living Room: Repair holes in walls.
“Furnace: Must work at time of re-inspection.”
A reinspection of the premises was scheduled for July 17, 2003 at 9:00 a.m., but according to a notation on the aforesaid exhibit, Miss Seeley cancelled. A further notation on the exhibit, dated July 23 and initialed “MS,” indicates “repairs not complete per Tenant.” The exhibit has a third notation initialed “MS” indicating that National Fuel inspected the oven, found no reason for a gas smell, and that the oven needed to be cleaned. These notations were no doubt made by the inspector, Melissa Seeley. In August of 2003, the petitioner paid to repair the wall once again, as well as to have the gas and electric hookups checked. By letter dated August 13, 2003 (respondent’s hearing exhibit C), Tri-County advised the landlord that the *904 housing assistance payments would be terminated effective August 31, 2003. Subsequently said section 8 housing payments did cease.
The issue presented is whether or not the failure to pass an HQS inspection and subsequent cessation of section 8 payments constitute a per se violation of the section 8 lease by a landlord, thus requiring dismissal of landlord’s petition in a nonpayment summary proceeding.
The respondent argues that since the apartment did not pass the HQS inspection, the petitioner violated the section 8 rules and regulations governing the tenancy. Consequently the respondent must move to another apartment, at great expense to herself, if she wishes to continue in the section 8 program. Respondent argues that the failed inspection is conclusive of landlord’s noncompliance with the section 8 regulations, thus requiring dismissal of the petition as well as monetary compensation to her.
The court is aware that some courts have held that landlords who have failed to comply with federal statutes and regulations governing section 8 programs were barred from commencing eviction proceedings for nonpayment of rent (see Vanderveer Assoc., No. 5 v Lewis, 114 Misc 2d 81 [1982]). The court is also aware that when the section 8 program commenced almost 30 years ago, there were many inconsistencies between the federal statutes and the federal regulations governing the program. These inconsistencies between statutes and regulations led to the Vanderveer holding. The court opined that it was “almost impossible for undesirable tenants to be evicted from low-income public housing,” because Congress intended that section 8 tenants “could not arbitrarily, or easily, be evicted.” (Vanderveer at 83.) This opinion presupposed that Congress intentionally enhanced the due process rights of tenants, at the expense of the due process rights of the landlord. Such an intention would have been of questionable constitutionality and, as a practical matter, would have rendered the program ineffective. In order to fulfill its goal of providing low-income housing, Congress certainly recognized it would need the willing participation of landlords. Therefore it would make no sense for Congress to intentionally restrict the remedies and due process rights of landlords, while attempting to induce them to participate in the section 8 program.
It appears that much has changed since the Vanderveer decision. In the Quality Housing and Work Responsibility Act of *905 1998, Congress recognized that the public housing system was plagued by problems, not the least of which were complex statutes and regulations that only aggravated them. In addition, Congress has declared that it is the policy of the United States to promote the collective actions of private citizens (i.e., landlords and tenants) to ensure that federally subsidized housing provides habitable housing for those otherwise unable to afford it. (See 42 USC § 1437 [a] [2].) Indeed, 42 USC § 1437 and 24 CFR part 982, as amended, appear to balance the due process rights of the landlord with those of a tenant. The regulations in particular are more landlord friendly, and specifically permit a landlord to terminate a tenancy for failure to pay rent. (See 24 CFR 982.310 [a] [1].) The regulations do provide procedural requirements for an eviction proceeding (24 CFR 982.310 [e] [2] [ii]), but no procedural violations are alleged in this matter, or are even apparent.
The court finds nothing in the statute or the regulations suggesting that the failure of an HQS inspection automatically bars a landlord’s eviction proceeding for nonpayment of rent. In fact, Tri-County’s letter to the respondent, dated July 24, 2003 (respondent’s motion exhibit E), acknowledges that the tenant is still required to pay its portion of the rent even though the section 8 payments were being abated. This suggests that even Tri-County, the program administrator, recognized that the results of its HQS inspection were not determinative as to the rights of the landlord vis-a-vis the tenant.
The evidence convinces the court that the petitioner has been a responsible landlord and has tried to maintain the premises as required under New York State law as well as the section 8 lease. The evidence also suggests that the apartment was not properly maintained by the tenant, as she failed to properly clean the stove, leading to its malfunction, and caused or allowed damage to the apartment which far exceeded normal wear and tear. The respondent herself was responsible for the needed repairs, and thus her reliance upon the HQS inspection is misplaced. Although the apartment itself may have been deemed noncompliant, the court finds that the landlord was compliant and did not violate the lease.
Accordingly the court holds that the failure of an HQS inspection and cessation of section 8 payments do not bar a landlord’s relief, as a matter of law, in a nonpayment summary proceeding. The respondent’s argument that the HQS inspection is controlling in this matter is without merit. The inspection itself is not, *906 and could not be, dispositive of the issue of whether or not the landlord failed to meet his obligations under the section 8 agreement. To hold otherwise would be to deny the landlord petitioner the same due process rights that are guaranteed to the tenant respondent. This is even more apparent when one considers that the tenant was responsible for the failed inspection and also the shoddy follow up by the HQS inspector who never even returned for a reinspection, but simply relied upon the respondent’s representations to draw her conclusions.
By reason of the aforesaid, the respondent’s motion to dismiss is denied in each and every respect, and the petitioner is awarded possession of the premises, as well as judgment against the respondent for rent to be calculated at $108 per month for the months prior to September 2003, and $300 per month for September 2003 and every month (or portion) thereafter that the tenant remained, or remains, in possession, as well as interest thereon from the third day of September 2003 and costs.