J-A12034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW J. DSIDA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HEATHER J. ESPOSITO | |
| Appellant | No. 1480 WDA 2016 |

Appeal from the Decree September 12, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): F.D. 13-006046-001

BEFORE:  OLSON, SOLANO and RANSOM, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 22, 2017**

Appellant, Heather J. Esposito, appeals from the divorce decree entered on September 12, 2016.  We affirm.

The trial court ably summarized the underlying facts and procedural posture of this case.  As the trial court explained:

> The parties married on June 14, 2003 and on January 9, 2013, the stipulated date of separation (DOS), the Plaintiff, hereinafter Husband, filed a divorce complaint.  [Appellant] filed claims for economic relief and began receiving $20,000[.00] per month in support pursuant to an interim order entered on April 8, 2013 and the issue was deferred to equitable distribution for final resolution. . . .
>
> [A] judicial conciliation on equitable distribution was held on June 18, 2014.  By consent order dated August 28, 2014[,] the parties stipulated to the DOS and the second conciliation and hearing regarding the DOS were cancelled. . . .

For a little over four [] months there was no action on the case until Husband filed a *praecipe* for a judicial conciliation on equitable distribution which was held on February 17, 2015. A second conciliation was scheduled for May 19, 2015 and at the request of [Appellant,] it was continued until July 14, 2015 based on her argument that Husband had not turned over discovery in a timely manner. . . .

On the day of the conciliation[, Appellant] was unprepared [because she had] discharged her attorney who had been representing her for over two [] years. She desired new counsel and requested another continuance of the judicial conciliation. The request was denied but [Appellant's] counsel was permitted to withdraw and the case was ordered to the Master for trial on the pending economic claims. . . .

A three [] day trial was scheduled to take place on [October 26, 27, and 28, 2015] before Master Chester Beattie. In September [] 2015[,] a series of motions were presented to the [trial] court regarding discovery and requests for [a] continuance. . . .

The Master's report and recommendation was issued on December 15, 2015[,] followed by an amended report and recommendation on December 30, 2015. [Appellant] and Husband filed timely exceptions and cross-exceptions [], and after briefs and argument [the trial] court entered an order on July 6, 2016[,] remanding the [case to the Master for] the single issue of the calculation of Husband's 2015 monthly income. . . . Husband's exception to the Master's alimony *pendent lite* (APL) award was granted and it was ordered that [Appellant] was to receive monthly support consistent with the April 8, 2013 interim order pending exceptions and final order. All other exceptions and cross-exceptions were denied. . . .

On August 8, 2016, Master Beattie issued his second amended report and recommendation wherein Husband's 2015 monthly income was recalculated resulting in a monthly APL award of $91,938.52 to [Appellant]. Prior to the order becoming final, a wage attachment was issued for this new support award. Husband petitioned in [motions] [c]ourt on August 23, 2016 and asked the court to order

that the wage attachment be reset to $20,000[.00] per month consistent with [the trial] court's July 6, 2016 order. The motion was granted and retroactivity was preserved. On September 12, 2016[,] a divorce decree was entered from which [Appellant filed a timely notice of appeal].

Trial Court Opinion, 12/22/16, at 2-4 (internal footnotes and some internal capitalization omitted).

Appellant raises four claims on appeal:

[1.] Whether the [trial] court committed errors of law and abuses of discretion in not compelling full discovery once [Husband] admitted that full disclosures were not contractually prohibited as had been represented to the court, contrary to the [trial] court's order, with full discovery having not been produced with only [17] days until the Master's hearing?

[2.] Whether the [trial] court committed an abuse of discretion in awarding [Appellant] only 55% of the marital estate when Husband earned in excess of at least 135 times [Appellant's] imputed earning capacity and Husband's non-marital estate had increased to be almost equal to that of the marital estate between the date of separation and the Master's hearing in less than three years?

[3.] Whether the trial court committed abuses of discretion in not awarding Appellant rehabilitative alimony and reinstating APL during the appeal?

[4.] Whether the [trial] court committed abuses of discretion in not awarding Appellant counsel fees, costs, and expenses?

Appellant's Brief at 4-5 (some internal capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Mark V. Tranquilli. We conclude that there has been no error in this case and that Judge Tranquilli's opinion, entered on

- 3 -

December 22, 2016, meticulously and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Tranquilli's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Tranquilli's opinion.

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2017

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

ANDREW J. DSIDA,

        PLAINTIFF,

Vs.

HEATHER J. ESPOSITO,

        DEFENDANT,

NO. F.D. 13-006046-011
SUPERIOR COURT #1480 WDA 2016

OPINION BY:

**JUDGE MARK V. TRANQUILLI**

COPIES SENT TO:

**COUNSEL FOR PLAINTIFF:**

Margaret P. Joy, Esq.
McCarthy, McDonald Schulberg & Joy
535 Smithfield Street
Suite 630 Henry Oliver Building
Pittsburgh, PA 15222

**COUNSEL FOR DEFENDANT:**

Robert L. Garber, Esq.
355 Fifth Avenue
Suite 605 Park Building
Pittsburgh, PA 15222-2407

**SUPERIOR COURT OF PENNSYLVANIA**
**PROTHONOTARY**
310 GRANT STREET, SUITE 600
PITTSBURGH, PA 15219

FILED
16 DEC 22 PM 2:05

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

ANDREW J. DSIDA

      PLAINTIFF,

   Vs.

HEATHER J. ESPOSITO,

      DEFENDANT,

NO. F.D. 13-006046-011
SUPERIOR COURT #1480 WDA 2016

## OPINION

**MARK V. TRANQUILLI, J.**                                        December 21, 2016

The Defendant, hereinafter Wife, appeals from the Divorce Decree entered on September 12, 2016. A Notice of Appeal was filed on October 3, 2016 and on October 11, 2016 Wife was ordered to file a Concise Statement of Matters Complained of on Appeal. A concise statement was filed on October 31, 2016 wherein Wife complains of thirteen (13) errors. The Court will address them in the opinion that follows.

## RELEVANT HISTORY

The parties married on June 14, 2003 and on January 9, 2013, the stipulated date of separation (DOS), the Plaintiff, hereinafter Husband, filed a Divorce Complaint. Wife filed claims for economic relief and began receiving $20,000 per month in support pursuant to an Interim Order entered on April 8, 2013 and the issue was deferred to equitable distribution for final resolution. The case was originally assigned to the Honorable William Ward and after re-

2

assignment to this Court, a judicial conciliation on equitable distribution was held on June 18, 2014.[1] By Consent Order dated August 28, 2014 the parties stipulated to the DOS and the second conciliation and hearing regarding the DOS were cancelled. For a little over four (4) months there was no action on the case until Husband filed a praecipe for a judicial conciliation on equitable distribution which was held on February 17, 2015. A second conciliation was scheduled for May 19, 2015 and at the request of Wife it was continued until July 14, 2015 based on her argument that Husband had not turned over discovery in a timely manner.[2] On the day of the conciliation Wife was unprepared having discharged her attorney who had been representing her for over two (2) years. She desired new counsel and requested another continuance of the judicial conciliation. The request was denied but Wife's counsel was permitted to withdraw and the case was ordered to the Master for trial on the pending economic claims.[3] A three (3) day trial was scheduled to take place on October 26th, 27th and 28th, 2015 before Master Chester Beattie. In September of 2015 a series of motions were presented to the Court regarding discovery and requests for continuance which will be addressed in further detail below as the rulings are subject to the present appeal. The Master's Report and Recommendation was issued on December 15, 2015 followed by an Amended Report and Recommendation on December 30, 2015. Wife and Husband filed timely exceptions and cross-exceptions respectively, and after briefs and argument this Court entered an Order on July 6, 2016 remanding the single issue of the calculation of Husband's 2015 monthly income back to the Master. Husband's exception to the Master's *alimony pendente lite* (APL) award was granted and it was ordered that Wife was to receive monthly support consistent with the April 8, 2013 Interim Order pending exceptions and

---

[1] By Consent Order dated May 29, 2014 the issue regarding the date of separation was added to the conciliation.
[2] See Order dated May 15, 2015.
[3] See Orders dated July 14, 2015: Motion for Continuance of Equitable Distribution Conciliation; Petition for Withdrawal of Appearance; Order of Court (Docket #42).

3

final order. All other exceptions and cross-exceptions were denied. On August 8, 2016, Master Beattie issued his Second Amended Report and Recommendation wherein Husband's 2015 monthly income was recalculated resulting in a monthly APL award of $91,938.52 to Wife. Prior to the Order becoming final, a wage attachment was issued for this new support award. Husband petitioned in Motion's Court on August 23, 2016 and asked the Court to order that the wage attachment be reset to $20,000 per month consistent with this Court's July 6, 2016 Order. The motion was granted and retroactivity was preserved. On September 12, 2016 a Divorce Decree was entered from which this Notice of Appeal was filed.

## STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Wife outlines thirteen (13) errors in her Concise Statement of Matters Complained of on Appeal. The Court finds that four (4) of the issues are waived as they were not preserved for appeal and will address these first.

The errors numbered six (6), seven (7), eight (8) and fourteen (14)[4] all complain about error by the Master in his Report and Recommendation made after the Equitable Distribution trial held in October of 2015. It is well established law that in order to preserve issues for appeal relating to a Master's Report a party must file exceptions. Pa.R.A.P. 302(a); *McArdle v. McArdle*, 679 A2d 1316 (Pa.Super. 1996); *Sebastianelli v. Sebastianelli*, 876 A2d 431 (Pa.Super. 2005). As evidenced by in the history above, both parties filed exceptions from this Report;

---

[4] Although Wife raised the issue of whether the Master erred in failing to admit her evidence of home repairs in the Exceptions filed in January 2016, the Court believes this issue to be waived as it was not developed in the accompanying brief or during argument to allow for meaningful judicial review. Furthermore, this claim of error attacks a credibility judgment made by the Master and as such is a meritless claim as credibility determinations will not be reversed on appeal. See, *Busse v. Busse*, 921 A2d 1248 at 1256 (Pa.Super. 2007); *Woods v. Cicierski*, 937 A2d 1103 at 1105 (Pa.Super. 2007)

4

however the matters specified in the above referenced errors were not raised by Wife.[5] Therefore, any issues which Wife failed to raise in her timely exceptions to the Master's Report and Recommendation are waived for appeal as they must be raised at the first opportunity. *Metzger v. Metzger*, 534 A2d 1057, 1058 (Pa.Super. 1987).

The Court will next address Wife's claims numbered two (2), three (3) and four (4), which argue that the Court erred by denying Wife's Motions for Continuance of the Equitable Distribution Trial and Motion to Compel. The standard of review of an order denying a motion for a continuance or related to discovery is abuse of discretion. *Baysmore v. Brownstein*, 771 A.2d 54, 57 (Pa.Super.2001), *Commonwealth v. Norton*, 144 A.3d 139 (Pa.Super. 2106) "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results [sic] of partiality, prejudice, bias or ill-will." *Baysmore* at 57. As trial courts have broad discretion in determining such requests, the rulings should not be disturbed by an appellate court absent apparent abuse of discretion. *Id.*

Husband is the owner of ChemADVISOR, Inc., and as the largest asset of the marital estate it was subject to much litigation. In March of 2015 Husband provided email communiques pertaining to potential sales negotiations of ChemADVISOR in response to Wife's discovery requests, noting that there have not been any sales agreements or letters of intent signed by ChemADVISOR.[6] These negotiations between ChemADVISOR and the business entities were subject to a Non-Disclosure Agreement (NDA) and therefore Husband's discovery responses redacted the names of the prospective companies and employees pursuant to that Agreement. When Husband was questioned about the identities of these companies during his

---

[5] See Exceptions to Master's Recommendation and Amended Recommendation filed January 4, 2016.
[6] See Wife's Motion to Compel dated September 25, 2015, Docket # 51.

5

July 1, 2015 deposition, Husband's counsel directed him not to respond on the basis of the confidentiality agreement. On September 25, 2015, fully six (6) months after receiving the discovery and also nearly three (3) months after Husband's deposition, Wife presented a Motion to Compel Discovery. In this motion she requested that Husband be ordered to turn over the names of the businesses that were redacted, as to allow Wife to subpoena and/or depose these entities if necessary in order to investigate the nature of these proposed "offers". At argument the Court was made aware that Husband was no longer subject to the NDA as to two (2) of the companies and that those names had been provided to Wife prior to argument.[7] So at the time of argument Wife was seeking the name of a third entity and although the parties and lawyers had signed a confidentiality agreement as well, the Court was not presented with any basis to find that the confidentiality agreement signed by the parties trumped the NDA signed between ChemADVISOR and a third party. The Court denied Wife's motion finding that Husband had made complete responses to Wife in compliance with the NDA; and in any event it was clear to the Court that the communications did not rise to level of legitimate offers. The Court noted on the Order that had Husband not been subject to the Non-Disclosure Agreement the Court would have required Husband to produce the name and did not prohibit Wife from using this evidence at trial for whatever purpose she felt necessary.

A Motion to Continue the Equitable Distribution Trial was presented on the same date representing that additional time would be needed in light of the discovery Wife was seeking in her Motion to Compel Discovery and because Wife was suffering from health issues. The latter was unsupported by any attached documentation. In light of the Court's ruling on the Motion to Compel and Wife's unsubstantiated health issues, the Court denied to continue the October trial

[7] Second Motion for Continuance of Equitable Distribution Trial. Docket #55.

6

but extended the discovery deadline and likewise extended the due date for Pre-Trial Statements in its Order dated September 25, 2015.

On October 9, 2015, Wife presented a second Motion to Continue wherein she argued that the Master's hearing should be delayed due to newly discovered evidence. In Wife's Motion she stated that she retrieved emails from a computer that had been in her exclusive possession, that revealed that Husband had discussions with more than the three (3) entities about the sale of ChemADVISOR in contradiction to his discovery responses and deposition testimony. Again, the Court having reviewed the attached emails and hearing argument from both sides did not find that this new information demonstrated anything more than preliminary negotiations at best, and were not bona fide offers that would be relevant to a business valuation. Furthermore, this information was in Wife's exclusive possession prior to the divorce filing and consequently available to her during the entire litigation. Her late discovery was of her own creation and the Court was not going to further delay trial as a result of her lack of diligence. Consistent with this Court's Order on September 25, 2015, Wife was not prohibited from presenting this evidence at trial for whatever purpose she felt necessary. In fact, during the summation to the Master by Wife's counsel, the content of these emails was raised, wherein he admitted that communications did not meet the accepted levels of business evaluation to qualify them as offers, but that the Master could consider them and draw an inference therefrom that about the value of ChemADVISOR.[8]

Underlying the Court's rulings on these motions was its cognizance that the case had been in litigation for over two and a half (2 1/2) years, and that most of the delay was attributable to Wife. Evidence of her delay included court orders requiring her to file her Inventory; to provide discovery; to appear for a deposition; and to permit the replacement of her counsel as the

[8] See Pgs. 58-60 Equitable Distribution Trial Transcript dated October 28, 2015

7

case approached trial. At the time the Court issued the Order on September 25, 2015 requiring her to appear for a deposition, Wife had been under an obligation to reschedule an unfinished deposition that began in June 2015. However, she failed to cooperate in scheduling another date, and when it was finally rescheduled three (3) months later on September 16, 2015, to coincide with Husband's third deposition, she failed to appear, resulting in the Order issued on September 25, 2015 requiring her appearance only weeks prior to the Master's trial.[9] Thus, absent emergent circumstances and/or demonstrable prejudice to either party this Court was clear it would not permit any further delay.

Furthermore, it is important to note that Wife, in her concise statement, argues that these denials prejudiced her at trial because it prevented her from fully developing a business valuation of Husband's company; however at trial, Wife chose to enter into a stipulation as to the value of ChemADVISOR.[10] Her agreement to this stipulation is inapposite to the claims laid out in the instant appeal.

Based on these facts and considerations, the Court did not abuse its discretion in denying Wife's motions and its rulings should be affirmed.

In Wife's fifth issue on appeal she assigns error to the Court's failure to award her counsel fees, costs and expenses. The standard of review for an award or denial of counsel fees is abuse of discretion. *Busse v. Busse*, 921 A.2d 1248 (Pa.Super. 2007). Title 23 §3701 permits the Court to grant this *needs*-based relief. Considerations include the party's ability to pay, his/her financial resources, the value of the services and the property received in equitable distribution. *Id*, (citing *Teodorski v. Teodorski*, 857 a.2d 194, 201 (Pa.Super. 2004). The facts in

---

[9] See Husband's Motion to Compel Deposition (Docket # 52)
[10] See Pg. 4, 201-202 of Equitable Distribution Trial Transcript dated October 26, 2015. The parties stipulated to the value of ChemADVISOR and Wife reserved the right to offer lay testimony relevant to its value and preserving Husband's right to offer rebuttal.

8

the instant case do not support the award of counsel fees, expenses and costs to Wife. Since April 2013 Wife had been receiving $20,000 per month in APL and on September 9, 2015 received a $400,000 advance payable directly to her attorney.[11] Additionally, as part of the distribution of the marital estate, Wife was to receive a significant cash award, specifically, $2,056,225, of which $1,130,924 was made payable within ninety (90) days of the entry of the divorce decree.[12] Wife also received a lump sum cash payment of $743,193 against the support arrears set at $1,796,275.62 and is paid $45,000 per month until the amount is paid in full.[13] The considerable cash awards to Wife negate any possible need and therefore it was proper to deny her request. See Fitzpatrick v. Fitzpatrick, 547 A2d 362 (Pa.Super. 1988).

This segues into Wife's claim that the Master erred in not awarding her support arrearages as a lump sum. It is within the broad discretion of the court to determine an appropriate payment schedule for support arrears. Krebs v. Krebs, 944 A.2d 768, 777 (Pa.Super. 2008), citing Kessler v. Helmick, 672 A.2d 1380, 1384-1385 (Pa.Super. 1996). It is not disputed that Husband has considerable wealth as the owner of ChemADVISOR, but it is important to look at the equitable distribution Order as a whole when determining if a payment schedule is appropriate and its effects on both payee and the payor. Within ninety (90) days of both the Master's Recommendation and Report, and Second Recommendation and Report, Wife was to receive nearly $2,000,000 dollars in asset distribution and support arrearages, with an additional $925,301 payable by the end of December 2016. In light of the vast cash award to Wife it was not an abuse of discretion to order a payment schedule for the balance of arrearages, as it adequately addressed both Wife's need and Husband's ability to pay.

[11] See Consent Order dated September 9, 2015, Docket # 49.
[12] See Master's Report and Recommendation, Docket # 64.
[13] See Mater's Second Amended Report and Recommendation dated August 9, 2016.

Moving on, the Court will address Wife's claim that the Court erred in granting Husband's Petition for Special Relief-*Alimony Pendente Lite* dated August 23, 2016. Said Petition explained that a new wage attachment had issued after the Master's Second Report and Recommendation dated August 9, 2016 which calculated Husband's monthly APL obligation to be $91,938.52. As a result, Husband asked the Court to issue a wage attachment to reflect the previous monthly APL award of $20,000. The Court granted Husband's Petition agreeing that since the exception and appeal period had not yet tolled, the previous award should remain in place.

The main purpose of APL is to ensure that the financial needs of the dependent spouse are met during litigation. *Schenk v. Schenk*, 880 A.2d 633 (Pa.Super. 2005). As the parties agreed to this amount pending equitable distribution, by the Interim Order dated April 8, 2013, it was reasonable for the Court to assume that $20,000 per month met the needs of Wife. Even if, upon review and application of the abuse of discretion standard, the Appellate Court believes that the Trial Court erred, any error was harmless, as retroactivity was preserved.

In Wife's Concise Statement number eleven (11), she assigns error to the Court's failure to attribute Husband with $120,000 in marital funds. The $120,000 pertains to funds received by Husband from ChemADVISOR prior to separation in 2013 that were deposited into a post-separation account. Wife maintains that this money represents a portion of the marital estate and should have been included in its calculation. Husband, who did not disagree that the money was earned prior to separation, effectively argued that the money was included in the calculation of his 2013 net disposable income that was stipulated to by the parties[14] and therefore was not subject to equitable distribution. This theory, more commonly referred to as "double dipping," means that money cannot be treated as both income and a marital asset. *Rohrer v. Rohrer*, 715

---

[14] See Pg. 4 of Equitable Distribution Trial Transcript dated October 26, 2015.

10

A.2d 463 (Pa.Super. 1998). Accordingly, the $120,000 was properly excluded from the calculation of the martial estate as it was included in Husband's 2013 net disposable income.

In her 12th assignment, Wife contends that the Court erred in awarding Wife only 55% of the marital estate, arguing that the facts supported an award upwards of 100% of the total estate. In support of her argument, Wife contends that Husband's post-separation estate exceeds the marital estate and that his future earning potential is on track to continue at the same rate or higher while Wife is unemployed and suffers from health issues.

The standard of review when assessing the propriety of an Order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009) citing, *Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super. 2006). Such a finding requires a showing of clear and convincing evidence and should not be entered into lightly. *Id.*

Title 23 §3502(a) provides guidance to the courts in determining equitable distribution by providing the following relevant factors for consideration:

> (1) The length of the marriage.
> (2) Any prior marriage of either party.
> (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
> (4) The contribution by one party to the education, training or increased earning power of the other party.
> (5) The opportunity of each party for future acquisitions of capital assets and income.
> (6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
> (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
> (8) The value of the property set apart to each party.
> (9) The standard of living of the parties established during the marriage.

11

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

The factors that weigh most heavily in Wife's favor are the parties' sources of income, and the opportunity of each party for future acquisitions. It is undeniable that Husband is in a superior position as it relates to both of these factors. However, these are but two (2) of the relevant considerations. The Master and Court also examined the parties' standard of living, health, and contributions by the parties to the marital estate, and towards the other's education and training, and in all cases found Husband's relevant testimony to be more credible.

In terms of their standard of living the Master found that the parties did not live an ostentatious lifestyle. Despite their wealth, Husband testified that both parties took care of the house, which included the shopping, cooking, cleaning and yard work.[15] This was contrary to Wife, who testified to a post-separation monthly budget of approximately $35,000 which included costs inconsistent with the lifestyle established during the ten (10) year marriage. Such expenses included, among other things, paying thousands of dollars for a male assistant to travel from Florida to Ohio twice a month, and paying $500 per month for dog daycare services.[16]

Furthermore, Husband was already established in his career prior to their marriage and Wife did not work after their first year of marriage, despite the fact that the parties did not have any children. Thus, the marital estate increased through the efforts of Husband and by the decision to live a relatively frugal lifestyle. Although Wife maintains that her household

[15] Equitable Distribution Trial Transcript dated October 26, 2015 pgs. 217-219.
[16] Equitable Distribution Trial Transcript dated October 27, 2015 pgs. 73-76, 89-92, 108-120.

contributions and earning potential became more limited as a result of her health issues, this testimony was unsupported by any medical expert or documentation, and consisted only of her own descriptions of her ailments/symptoms.[17] Furthermore, Wife had been receiving monthly support of $20,000 since February 2013, and instead of saving to prepare for her future, chose to spend the money in support of a lifestyle much more extravagant than that which she lived during the marriage. Again, Wife was not found to be credible.

Issues of credibility are solely within the province of the fact finder, in this case the Master, as he/she was in the best position to make that assessment. Such findings will not be disturbed when supported by the record. *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa.Super. 2007), *Childress v. Bogosian*, 12 A.3d 448, 455-456 (Pa.Super. 2011). The fact finder is free to believe all, part or none of the evidence. *Williamson v. Williamson*, 586 A2d 967, 972 (Pa.Super. 1991). In this case there is no basis to overturn the findings of the Master and this Trial Court regarding credibility determinations, as they are supported by the record.

After consideration of the statutory factors it was recommended by the Master and affirmed by this Court that Wife receive more than half of the marital estate. This 55% division afforded Wife with just under $3,000,000 in assets, of which over $2,000,000 would be in the form of a cash payment. At the time of this award the Master and Court were also aware that Wife would be receiving well over $1,000,000 in support arrears. Thus, looking at the distribution scheme as a whole, this division accomplished economic justice for both parties and should be upheld.

Lastly, Wife argues that the Court erred in its determination that ChemADVISOR is a non-marital asset. Title 23 §3501(a) defines marital property as "all property acquired by either party during the marriage". Marital property does not include "property acquired prior to

---

[17] Equitable Distribution Trial Transcript dated October 27, 2015 pgs. 12-13.

13

marriage." Title 23 §3501(a)(1). Thus, the timing of the acquisition of an asset, i.e. the "when" and not the "how," is the determining factor when characterizing an asset as marital or non-marital. *Anthony v. Anthony*, 514 A.2d 91, (Pa.Super. 1986)

It was undisputed at trial that Husband entered into a purchase agreement for ChemADVISOR on January 2, 2001 more than two (2) years prior to marriage. Pursuant to the agreement, Husband paid approximately $7,000 for six (6) shares of ChemADVISOR with the remaining shares purchased by the company itself. [18] Husband's expert testified that this purchase agreement operated to make Husband the 100% owner of ChemADVISOR. [19] However, Wife maintains that because ChemADVISOR paid the remaining portion of the purchase agreement, and is a company solely owned by Husband, that those company funds were marital funds and the use of them converted ChemADVISOR to martial property. [20] The Court was not convinced by this argument, as the method of acquisition is not a determining factor. Contributions by a spouse to assets acquired prior to marriage do not transmute an asset from non-marital to marital. *Winters v Winters*, 512 A2d 1211, 1215 (Pa.Super. 1986) citing *Anthony*. In relying on this argument, Wife seeks to apply principles of equitable distribution such as, financial contributions and equitable fairness, as a means of recharacterizing this company as a marital asset. But her reliance on these concepts and factors is misplaced as they are proper considerations *only* at the time of equitable distribution, by which time assets have already been characterized as marital or non-marital. Utilizing the timing of the asset as the determining factor does not create equitable injustice as asserted by Wife; as any financial contributions or efforts of a non-owning spouse are properly considered by a court when determining the distribution of the increase in value of a non-marital asset and such analysis took place.

[18] See Pgs. 10-12, 38-40 of Equitable Distribution Trial Transcript dated October 26, 2015.
[19] See Pg. 39 of Equitable Distribution Trial Transcript dated October 26, 2015.
[20] See Wife's Brief in Support of Exceptions, Docket # 78.

As the time of the purchase is the only consideration, the Court correctly concluded that ChemADVISOR was a non-marital asset.

For all the foregoing reasons, the Trial Court's rulings should be AFFIRMED.

BY THE COURT,

_____, J.

15